```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


BRIDGET PAGE,

                    Plaintiff,

vs.                                     Case No. 14-1016-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 6, 2012, ALJ George M. Bock issued his decision (R. at 11-25). Plaintiff alleges that she had been disabled since January 4, 2005 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through September 30, 2012 (R. at 13). At step one, the ALJ

found that plaintiff did not engage in substantial gainful activity after the alleged onset date (R. at 13).  At step two, the ALJ found that plaintiff had severe impairments of right shoulder osteoarthritis, depression, mild degenerative disc disease of the cervical spine, and moderate obesity (R. at 13).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14).  After determining plaintiff's RFC (R. at 16-17), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 23).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 24).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err by failing to consider the opinions of Dr. Grote which were set out in a letter dated April 24, 2012?**

On April 19, 2012, Dr. Grote, a treating physician, prepared a medical source statement-physical, in which he opined that plaintiff could only sit for 1 hour and stand/walk for 1 hour in an 8 hour workday (R. at 758).  He further opined that plaintiff could not crouch, crawl or finger, and would need to lie down every 2 hours for 30-45 minutes.  He also indicated that plaintiff's pain and/or medication would cause a decrease in concentration, persistence or pace (R. at 759).

5

The ALJ found that this opinion was inconsistent with other substantial evidence of record. The ALJ indicated that plaintiff had not developed the sort of physiological abnormalities or the sort of motor, sensory, reflex, or strength deficits that could reasonably result in the extreme degree of limitation reflected in Dr. Grote's opinion. The ALJ further noted that Dr. Grote's opinion was presented in a checkbox format, which does not reference any specific laboratory findings or medical signs that support the conclusions indicated therein. The ALJ also stated that the limitations in his RFC report is not reflected in his treatment notes. The ALJ therefore gave little weight to his opinions (R. at 21).

The court would also note at step two the ALJ found that plaintiff's headaches were not a severe impairment. The ALJ stated that the record "does not demonstrate any objective medical signs or laboratory findings consistent with a severe headache impairment, such as abnormal findings from a computed tomography X-ray examination of the claimant's head" (R. at 14).

However, the ALJ failed to discuss the opinions set forth in a letter from Dr. Grote dated April 24, 2012, only 5 days after Dr. Grote filled out the physical RFC form. In his letter, he states the following:

> This is a letter to document her
> disabilities.

6

> Ms. Page first came to me back in 2007.  **She had suffered several months apart a motor vehicle accident and a jet ski injury…Since that time she has had severe cervical and upper thoracic pain specifically involving the right scapular area.  She also has pain in the neck that goes down the arms sometimes more specifically on the right side.  In addition on the right side of the low back she has pain that can shoot down the sciatic distribution.  In the neck she has severe injury to the aponeurosis of her neck, which is at the occipital base and this causes severe headache pains and triggers migraines or cluster headaches 3 to 5 times per week.**
>
> …more recently we were able to give her Triptan medicines which have helped…
>
> In addition she has had depression related to this chronic pains syndrome and has not tolerated many medicines, but most recently she has had a beneficial response to Pristiq 50 mg 1 per day.  Four years ago I did trigger point injections on her and I repeated them today trying to narrow down pain which occurs in the right thoracic area specifically on the costal rib margins.  We were able to successfully block some of her pain and hopefully this will be a more long lasting thing but it more than likely will require some type of repeat tender point injection.  In addition we injected the iliac crest and right sacroiliac areas today.  We will hope for some long lasting results.  Finally in the last few months we have put her on hydrocodone to help her pain in addition to using migraine medicine, muscle relaxers, and also mood stabilizers to help headache prevention.

(R. at 776, emphasis added).[1]

---

[1] The ALJ's only reference to this document was to note that Dr. Grote mentioned treatment for a heel spur (R. at 14, 776).

7

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). According to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not

8

Case 6:14-cv-01016-SAC   Document 16   Filed 03/24/15   Page 9 of 14

control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

The ALJ clearly failed to follow the agency's own regulations and the case law regarding the opinions expressed by Dr. Grote in his letter on April 24, 2012. This failure is especially significant in light of the fact that the ALJ found that plaintiff's headaches were not a severe impairment because of the lack of any objective medical signs or laboratory findings to support such an impairment. In his letter, Dr. Grote addresses the physiological cause of her headaches. Furthermore, this letter provides a narrative discussion of the bases of her disabilities; it was therefore error for the ALJ to discount the opinions expressed by Dr. Grote on the medical source statement-physical because those opinions were presented in a checkbox format. The letter, written 5 days after Dr. Grote filled out the RFC form, was designed to specifically document the bases for her limitations.

Defendant argues that this letter is nothing more than a restatement by Dr. Grote of plaintiff's subjective complaints (Doc. 15 at 5). However, nothing in the reports indicated that he was only restating plaintiff's subjective complaints. An ALJ cannot reject a medical opinion based on a speculative

9

conclusion that the report was based only on a claimant's subjective complaints. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); Victory v. Barnhart, 121 Fed. Appx. 819, 823-824 (10th Cir. Feb. 4, 2005). Furthermore, this argument was not made by the ALJ, who failed to discuss the documentation of the bases for Dr. Grote's opinions regarding plaintiff's disabilities. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

This case therefore shall be remanded in order to consider the opinions set out in Dr. Grote's letter. The ALJ shall also reevaluate the opinions of Dr. Winegarner in light of the

opinions of Dr. Grote regarding plaintiff's headaches.[2]  Dr. Winegarner indicated in 2007 that plaintiff was diagnosed with common migraine headaches which were deemed, at that time, intractable and represent a worsened form of migraine called "chronic daily headache."  The headaches were also associated with neck pain, difficulty thinking and concentrating during a headache, and frequent need for headache.  Dr. Winegarner also indicated that, until her headaches were under control, she would likely miss work on occasion because of her headaches (R. at 410).

In his decision, the ALJ also discounted the opinions of Dr. Grote because the ALJ indicated that plaintiff has not developed the sort of physiological abnormalities or the sort of motor, sensory, reflex, or strength deficits that could reasonably result in the limitations reflected in Dr. Grote's opinions (R. at 21).  However, the ALJ does not cite to any medical evidence in support of this assertion.  By contrast, Dr. Grote's letter of April 24, 2012 provides an explanation of the bases for her limitations or disabilities.

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinions.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.

---

[2] The ALJ gave this opinion little weight, in part, because it is inconsistent with the weight of the evidence (R. at 21).

2002). The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). An ALJ's broad assertion that the medical evidence identifies no clinical signs typically associated with musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, or neurological deficits was found to be an improper justification for disregarding an opinion of a treating source. The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain. An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). The ALJ in this case made the very same error as the court found in Bolan. In the absence of any medical evidence that plaintiff does not have the sort of physiological abnormalities or motor, sensory, reflex, or strength deficits that could reasonably result in the limitations set forth by Dr. Grote, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Finally, the ALJ asserted that Dr. Grote's treatment notes do not support his opinions. On remand, the ALJ should review the treatment note of June 1, 2012 which states that plaintiff came in with a severe migraine headache, and that "she remains disabled with pain, anxiety and malaise" (R. at 783). The ALJ should also consider the letter from Dr. Grote, dated October 2, 2012, which was submitted after the ALJ decision, but before the decision of the Appeals Council. Dr. Grote, in that letter, states that throughout the period of treatment (2007-2012), plaintiff has remained unable to function in an intense sedentary job, and that the medications that plaintiff has received have essentially made her barely functional to do activities of daily living (R. at 797-798).

On remand, the ALJ, after considering the opinions of Dr. Grote and reexamining the opinions of Dr. Winegarner in light of Dr. Grote's letter of April 24, 2012, the ALJ shall determine the severity of plaintiff's headaches, and make new RFC findings in accordance with SSR 96-8p. According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If

13

the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.  The ALJ must also make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.  1996 WL 374184 at *5; <u>Fleetwood v. Barnhart</u>, 211 Fed. Appx. 736, 740 (10th Cir. Jan 4, 2007).

   IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

   Dated this 24th day of March 2015, Topeka, Kansas.


                         s/Sam A. Crow
                         Sam A. Crow, U.S. District Senior Judge